Good morning, your honors. Michael Crowley and Emily Crowley on behalf of the appellant, Mr. Hernandez-Torres. Your honors, this case comes down to the issue of the government basically trying to piece together through three infirm removals an argument to be able to obtain a conviction. Really? Go ahead. You said three infirm removals. Right. Well, lacking in proof, let's put it that way. Let's focus on the last one because that's the one the jury found that your client had returned after. Well, I think there was confusion about what the jury found. I know that... We have an interrogatory that the jury signed and this has really come to light to me in the last couple of years. We all sit up here and we go, that makes logic sense. We don't all sit up here. True. True. Well, here's the jury verdict form. We find, you unanimously find that the government has proved beyond a reasonable doubt that the defendant, his name, was removed from the United States subsequent to December 6th, 2010. So that means the jury found, given the three removals, it found that there was a 2011 removal I think was the one that mattered, right? Well, that's the government's argument. I agree. If you can read that sentence a different way, I'd like to know how to read it. I think that... And the jury was polled, right? They were polled generally. And there wasn't any hesitation, right? Not that I know. I wasn't a part of that. So therefore, we're focusing on that removal. Right. Now, what was the evidence of that removal? Because you're saying there was no evidence. The government didn't prove there was a removal. Well, okay. What was the evidence of that removal? I'll jump to that with a little bit of argument in my mind about what... I understand that on the face of it, it looks that way, but it's not in context of what the jury received in evidence and what they received in evidence in the 2011... But that's why I'm asking you about the evidence. I'm asking you about whether or not there was evidence that he was removed from the United States subsequent to December 6, 2010. What was the evidence on that point? The evidence... They introduced documents. They introduced testimony that someone saw him go across the border. But that was a reinstatement, that 2011. That had to rely on the 1998 proceeding being done correctly and that he was actually removed. And that was the... There was a 2011 warrant of removal, right? There was. And then there was the testimony of Agent Brabaeska. I don't know how to say that because I'm from Idaho. But he says, or she says, sorry, on January 26th, she verified his identity, including verified his photograph on the warrant before physically observing his deportation through Calexico, California, Port of Entry. Her signature on the warrant verified she knew of the defendant's identity and physically observed the deportation. Then we had Acuna. On July 26th, he verified the defendant's identity. He had recorded an impression of the defendant's fingerprint on the warrant. They would not have signed the warrant if he hadn't verified his identity and taken his fingerprint. And then we had the defendant's testimony. I left the United States on January 26th. Right. Seems to me that's good. All those... But that does not meet all the elements. The elements required that it was a valid deportation, a valid removal. And the only way that it was valid and the only way that it could be done such that he could be convicted was that the 1998 was done correctly because they all relied on it. But that's a different argument than your brief makes. Your brief says the jury didn't find which removal order that he left afterwards. If you want to make a legal argument that the 1996 one is invalid and all the rest of them fail, that's different than the argument in your brief about an improper jury finding. Well, I... The jury finding is quite clear that the removal was subsequent to December 6th, 2010, and the evidence is quite clear there was a removal in 2011. If you want to argue that all the removals were invalid, that's a different argument than saying the jury didn't find which one. And I don't see that argument in your brief. No, I think that was in the brief because we said that there was a lack of evidence for the elements. And that's what happens in these, especially when there's all reinstatements that happen. And that's why they had to glom them together. Why didn't we just decide, why didn't the government just decide to put before the jury the 1998? Well, it did. The government put evidence of all three removals before the jury. Over-objection. And the reason for that... Okay, but no. Let's stop for a second. The government put in evidence of all three removals. The government's – the jury found that it was the third removal, that he was removed at the United States subsequent to the third order. Your argument on appeal is that we don't know which one the jury thought he was removed after, and the jury says that. If you made a different argument on appeal, which is that none of these are any good, we'd have to address that. But I don't think you made that argument even to the district court, did you? Well, the argument – yeah, I wasn't before the district court. I mean, your side. Right, right. The argument – okay. I mean, I didn't see that argument any place. The argument – I'm thinking now. If you'd have made it, I'd have something on it. Let me try to make the nexus there. The way we – and I understand the confusion, and we probably could have been much clearer in the briefing, because we – You could have raised the issue. No, no, you wouldn't have raised it. Give me a shot at trying to show the nexus that happened there, and that is that there was insufficient evidence because it required – that goes to the unanimity part of it, because I know we can jump to the conclusion that they were unanimous about that based on that – and the only reason that that was in the instruction was for a sentencing enhancement. And so once again, the guidelines are wagging the tail of the elements of the offense. But it's here. And so I'm still trying to understand your argument. There's three removal orders, right? Right. Your client was removed – returned after the third one, after he was removed on the third one. Right. Your argument is that none of them are any good because the first one was no good. That's not in your briefs. If your argument is the government didn't prove up the first one and therefore the other two fail, I have trouble with it because the government put on somebody to prove up the first one and the second one and the third one. So I'm – just – I'm confused about your argument. I understand. Tell me what your argument is. Okay. So the argument is that the lack of unanimity, the confusion among the jury – and I know it looks, when we look at it in plain language there, it seems fine. But as we often know when we look at things in plain language, we don't know the context that was put in. So what they were confronted with, the jury, is evidence of all these removals that went on all – throughout over a long period. And the judge instructed them that they had to be unanimous as to which one. Right. And so how do we know that? I know that we jumped to the conclusion that because that was the only one after that – and basically that's a coincidence. The only reason that date is in there is for the sentencing enhancement. So it's a coincidence that that comes up. We don't – they still have to find the element. Or bad luck. Or bad luck. Yes, that would be it too. Well, can you address the issue – I used to do capital defense and I always worried about the Shad case. In the Shad case, the case goes to the jury and it can either be felony murder or premeditated murder and the Supreme Court says, we don't care. As long as they're unanimous on the ultimate guilt, we're not going to parse which element they found. Why is it different than that? I know. I think it's different because they have to hear it was important, one building on the other, that they made a finding that this was a valid deportation. The 2011 was a valid deportation. The only way it's valid is if the 1998 was valid. But isn't validity a legal issue? That's not the issue that goes to the jury. In other words, the judge doesn't say to the jury, determine whether the 1998 deportation order was valid. That's a legal argument you make to the judge. That's a 1326d argument. Right, which you never made in this case. But there was a fact – there was a motion, I believe, made on it. Right, but it's not up here. Correct. It's not before this Court. I didn't see it. Yeah, it's not before this Court, but it was made in the lower court and the judge ruled against it. What happened – but the judge specifically, because that came up in the instructions. But was the jury supposed to say this is – the first one was an invalid deportation order. On what basis would the jury say that? Because they have to find that he was properly deported. And that's part of the confusion. You're right. I understand. How would a jury do it? Well, the government introduces the deportation order from 1998. It's there in evidence, and there's witnesses who say this is what happens. So what more do they have to – on what basis could the jury determine that that order was not valid? If they found that 1998 – that because this was – and this was what was lacking in the trial court, that there was a dearth of instruction about the fact that for it to be validly deported, because it was a reinstatement, that the 1998 had to be valid. But I'm still – I'm asking the question, and I guess I'm – we're missing each other. On what basis, in this case, could the jury possibly have found the 1998 deportation order, which appears on its face to be a deportation order, to be invalid? What evidence was before the jury for which – If they hadn't been confused by all the other evidence that was put before them. No, no. Put it aside. Let's assume the only issue in front of the jury was whether the 1998 order was invalid. On what basis could they possibly reach the conclusion that it was invalid? And that is the problem. I understand. There wasn't a basis, and that should have been put before the jury, because it's an element of the offense that he was previously deported by an immigration judge. That's an element of the offense. And maybe we're just missing each other. I'm struggling what more the government can do to demonstrate that he was previously deported by an immigration judge than show up with a 1998 order, identify it, say that this is the order in which he was deported. Well, if the verdict form had said that the 1990 – okay. What more can they do? And you never challenged that. You never said, oh, no, that's not the – he wasn't deported in 1998. That was in the closing arguments. But there's no evidence. And I know we can argue lots of things, but there's no evidence in the record that goes anywhere towards demonstrating the invalidity of the 1998 – The defendant's testimony was the only evidence. He said that he never appeared before an immigration judge. Okay. Fair enough. That was evidence. Thank you. I think that the one other area that has a personal affinity for me that I will just mention is the higher intent that we argue for in these cases, because the distinction between an attempted entry and an entry such as this one, where he doesn't even know whether he's in the U.S., he doesn't know where he is, that should be the standard, that we have a higher intent. But that one is foreclosed by our cases about the censors, isn't it? There are some bad cases on that, yes. I mean, I'm sympathetic – What I would call bad. I'm sympathetic to you, but they are – the cases are against you on that one. Good morning. May it please the Court. Benjamin Hawley for the United States. As counsel recognized, the validity of a reinstatement is best addressed and, in fact, needs to be addressed by a 1326d motion prior to trial. That's not for the jury to determine. That's a legal argument for the judge to make. Here the only defense at trial that Mr. Hernandez agreed to basically every element of the offense. The only thing – excuse me – the only thing that he disagreed with was whether he had been deported or if he had voluntarily returned. He didn't contest, as I understand it, that there was a deportation order. He says, I wasn't in front of the judge when – Correct. He said either that it was falsely created or fabricated or that it applied to somebody else seemed to be the gist of his argument. And that's why the government not only for the 1998 order did not only present the order of removal itself, but also fingerprint evidence that it was his fingerprint, he had his photo, his A number, and it presented the audio recording from the 1998 proceeding before the immigration judge where the person on that audio identifies himself with Mr. Hernandez's name, with relevant details, and even corrects the judge on some specifics that are consistent with Mr. Hernandez's testimony at trial. And that was a defense that went to intent, I take it, rather than the validity of the orders. In other words, it was a defense that said, I didn't knowingly – Correct. Violate a removal order because I didn't know I was removed. It went to whether he subjectively believed he had been removed, which in the government's view is irrelevant, independent of that. But the judge allowed it in regardless. Can I ask you – oh, go ahead, Judge. I wanted to ask you a question about the part of the case that your opponent didn't have much opportunity to argue. And it's the distinction we make between attempt and being found in. Right. You agree that if you'd had an agent watch him cross the border and watch him until you detained him, that this would be an attempt case? Right, because there would be an official restraint issue. Isn't that a strange distinction, now that we have all these electronic things? I mean, he crosses the border. Then the question of what crime he commits is really up to you, isn't it? Because if you send somebody to go – you, the government – if you send somebody to watch him quickly, it's an attempt. But if you wait until he walks for a mile and then find him, it's being in the country illegally. Do those cases make sense anymore? I know we're bound by them, but I'm – I think they do in the sense that in one situation you have a defense and a different – and a lower standard or a lower intent element, whereas with official restraint, that defense is available, but then the government has – or is no longer available, but the government has to prove the higher intent for an attempted – Yeah, but you're in effect controlling the level of intent for the crime. I mean, not in this case. I don't think there's any evidence that somebody purposefully delayed. Right. In a case where you get – the sensor goes off, if you had a camera there, would he be under surveillance for purposes of – Right, yes. So you decide what crime the defendant commits by how much surveillance of him you undertake. It strikes me as a strange doctrine, but it is our doctrine. I'm not – I'm not – I'm not asking – it's our fault, not yours. It's just I'm having difficulty understanding why that makes sense. Well, and I don't know that it's the government necessarily choosing which one. It's – to the extent we can see people crossing the border and try to stop them there, we do. It's not that we stop looking at somebody, let them get in a mile so that we can change the burden of proof or change the element. And I'm not sure it makes any practical difference in trials. You can do it with your charges, generally. It's just not unusual for you to decide to charge somebody with the higher crime because he's not pleading guilty. If he pleads guilty, we'll try him with less. What's strange here is it's the same crime. Right. It's the same crime. It's just – it's just committed different ways with different intent. I agree. I mean, it's a silly distinction, but no more silly than lots of them. I wanted to ask you – I think I now understand what this is about. Question two in the jury verdict has to do with whether the entry we're talking about is after a certain date. Right. That seems – I didn't understand until now. That comes after you find him guilty. Correct. So that really has nothing to do with the question of guilt, which is where we look to see whether they have a unanimous view of which thing it is. That's purely for sentencing purposes. It increases the maximum penalty under 1326B, yes. Okay. So when they found him guilty, they weren't following that instruction. I mean, they weren't answering that question. Though they were still – It certainly has to do with sentencing. Correct. Though the jury didn't know that. And they were still instructed for the guilt phase of it to be unanimous as to which removal or removals they were agreeing on. For all the jury knew, this was asking them which one they were unanimous about. Correct. They weren't, of course, told that there would be a – That comes after you find him guilty. Well, it may or may not come – they weren't instructed – it comes after on the piece of paper. The question is if you find him guilty, then you answer the following. Well, if you find him guilty, tell us which one you were unanimous about. And that's – they told them. I don't – this is us talking to each other. It's not a question. But your purpose was to find him guilty and then to ask him – after you found him guilty, answer the following question. But your purpose was to sentence him. Right. The subsequent two-day changes it to a 20-year maximum penalty as opposed to a two-year maximum penalty because he had returned after deportation for, among other things, an aggravated felony. So let me ask you the question that follows, Judge Reinhart. Let's assume question two wasn't asked. Right. Put aside the sentence for a second. Defend this case in the absence of that finding. Is there a problem in the absence of that finding? No, because the jury was still instructed that it had to be unanimous as to which removal or removals it was finding. So it could have found one. It could have found all three. And they're presumed to follow those instructions. The judge specifically said, beyond reasonable doubt, and be unanimous as to which ones. As to which one he left after. Correct. Well, at that point, we'd be trying to determine if there's enough evidence to support any one of the three. Right. Whereas, because we have that question, we can be limited to the last. We know they at least found the last one. Of course, the government's view is there was plenty of evidence for all three. But at the very least, we know the last one. But even in the absence of that, this would be a sufficiency of the evidence case. Exactly. Correct. Well, I was just trying to figure out all along, until I heard the argument, why that question was asked with that date. And now I think I understand. That was the date of his prior conviction in state court, which he was removed subsequent to and then returned after that removal. That's the reason for that. Unless the Court has any other questions? No. Thank you. Thank you, Judge Reinhart, for making my argument that I should have made before. And that's the problem. That second question, the jury had no idea what that was about. There was no evidence about the December date. They knew what it was about. They didn't know what its significance was. I don't think they knew what it was about. In fact, there was no evidence about the December date. And ironically, that wasn't even the criminal offense that ended up enhancing him. But you're talking about the jury having no idea what it was about. I agree with you. But the jury surely had an idea what the question was. It was a very straightforward question. But why would the December date be in there? They must have scratched their heads about that and been confused as to where's that date? There was absolutely no evidence in the entire trial about that date. Why are we deciding that? There's plenty of evidence that your client reentered the country after that date. Yes. He was there at the trial. So, yes, he had reentered. That's all they were asked. Did he reenter the country after that date? Right. But we're relying on it here exclusively to find that they did find it unanimously. And that's the thrust of our argument because I don't think it properly goes to that issue. Even though they've said they found it unanimously. But in a question that's out in the haze that they have no notion of what it's about. If I ask the jury, I'm the trial judge, and I say, I want you to tell me whether or not the defendant's guilty, and I want you also to give me a unanimous verdict about whether the defense lawyer has gray hair. And the jury goes back and says, I have no idea why he's asking, but, yeah, he's got gray hair. We all agree he has gray hair. Isn't that a good finding that you have gray hair? I understand what you're saying. I definitely have gray hair. There's no question. I plead to that. But what I'm trying to focus on is the context of this, where we're focusing on whether the jury really was understood the unanimity requirement and that they actually did make that finding. And I don't think using that second question goes to that issue. In the context of everything that was thrown at them with limiting instructions and with all the infirmaries, they couldn't even tell who the judge was in the original 1998. Okay. Thank you. Thank you very much. The case to this argument will be submitted. We only went over.
judges: Reinhardt, Smith, Hurwitz